The first case this morning is Fike v. Bloomington Firefighters. That's case number 4100575 for the appellant William Conner and for the appellee Esther Seitz. Mr. Conner. May it please the court, good morning. William Conner on behalf of plaintiff appellant Robert Fike. Overturning a board's or lower court's decision regarding manifest weight or against the manifest weight of the evidence is admittedly a difficult proposition, but one that applies to this case. I would first briefly like to comment on Section A of Appellee's Brief on page 4 that states that Fike agreed that some evidence in the record supports the findings of the Bloomington Firefighters' Pension Board and that the order entered by the circuit judge confirms this. We need to get over that hurdle immediately. And that blatantly misstates what was said at the circuit court. As an aside to a question regarding manifest weight of the evidence, I responded that in any case a scintilla of evidence could be pointed at by the board to support the board's decision. I believe the example that I gave was yes, Mr. Fike had a degenerative or a diagnostic exam in 1993 that showed scoliosis, but in no manner did I ever concur that evidence in the record supported the board's decision. That brings up an interesting question. What is some evidence? Well, the case law is all over the board regarding that judge manifest weight. I don't know if it's ever been given a percentage or not, but I do not believe that a scintilla of evidence that the board could point to that would support it supports the manifest weight. I believe manifest weight of the evidence means the evidence as a whole looked at. In all the years I've been representing firefighters and police officers before pension boards, this is the only case I've ever seen where a board's decision didn't once even mention the doctor's opinions. So those were never even brought up. So I don't believe I have an immediate answer to what comprises that. I just believe in this case. It sounds like it must be someplace between the scintilla and the preponderance. I will leave that to the court to decide. From my reading of the case law, it's a case-by-case basis, and I don't have the answer to that yet. But it's a case-by-case basis from the prior event, not for us. That is true. I agree with that. They made their call, so essentially our question before us now is, could any reasonable person reach the decision they reached, isn't it? That is why I do not appear before this appellate court very often. This is such a case. This is a case that is against the manifest weight of the evidence if we look at the order of the board. But in order for us to reach that decision, whatever you call it, don't we have to conclude that there was no evidentiary basis for the prior effect? That is what I believe in this case, and I would like to point out every point that they made in a brief fashion to state that it is against the manifest weight and there was no evidence to support it. The order of the board stated that it was just as likely that his back problems are simply degenerative in nature and not resulting from an act of duty or the cumulative effects of duty, and they base that upon four reasons. And I'd like to briefly state that those four reasons have nothing to do with the evidence in the record regarding the medical records or the reports from the doctors. You mean they weren't part of the record? They weren't part of the record. The board didn't address them in their decision or say anything about the doctors' opinions. It's not in there. I'm not sure I understand you. What do you mean? The board, after hearing all of the evidence, submitted a decision regarding that evidence, and I've never seen a decision by a board that did not set forth any of the reasons or facts set forth by the three doctors that were included in the record. Well, they could have, didn't they? Is there any requirement in the law that they must, even though perhaps it's a good practice? I didn't say it was a requirement, Your Honor. Does that undermine the findings they made that they didn't? I believe it could that they didn't mention it, but I would like to point out that it was the four reasons. Are you arguing that we so conclude? So conclude, I'm sorry? That because they didn't describe all of the evidence that they heard, that we conclude that that undermines their findings? I do not want to say it undermines their findings. I think it's an important decision to make. But, no, I don't think that turns the decision as to whether they mentioned it in their findings. Mr. Conner, all three of these doctors were treating doctors? No, I believe only one, Dr. Atwater, was a treating doctor. The other two, Martin and Dr. Fletcher, were picked by the board to be seen. The board makes a decision on what three doctors. Yeah, it's a different set-up, I guess. A different set-up all the time. This isn't particularly relevant, but I just was not clear what an AIRPAC and an SCBA unit are. It's a self-contained breathing apparatus. It's a heavy piece of equipment that at times, if they go into a fire, they have to wear on their back. I'm not sure. I know Bloomington, there's been articles in the paper that they've, because of all the workers' comp claims, they've switched to a lighter pack now, I believe the records show. So it's the same thing? Yes, it's a self-contained breathing apparatus, it's the same thing. So briefly, the four points that I want to point out how they base their decision. One was that he suffered back problems in 1993 when he joined the department. The only evidence regarding that was a diagnostic study that was put in by the board that showed that there was a scoliosis in the lumbar spine, which is a congenitive curvature of the spine. And that diagnostic study said it was deemed minimal and unremarkable. The second reason is Mr. Feig did not complete an accident report until approximately four weeks after the accident. I am unaware of any law in the pension area that states there is any time limit regarding reporting an accident. I know in the workers' compensation arena, it's 45 days. Obviously, he reported it within a month, which is well within that. Also, I don't believe the city disputed notice in that after the circuit court's decision, we settled the workers' compensation claim for $175,000 regarding this accident. So the city never thought notice was a problem in this case. The third reason was that Mr. Feig did not seek medical treatment until two months after the accident. I believe it was set forth adequately in the brief, but he attempted to set up an appointment with a specialist within a couple of weeks, but it was determined that that doctor couldn't see him for four weeks out. So he went ahead and set up another appointment with another doctor to get him quickly. So yes, there was a delay, but I do not believe at all that that should have any evidence or any impact on how long it took to seek treatment. There was no evidence in the record whatsoever of any intervening trauma by the time he hurt himself and by the time he went to the doctor. And then the final reason the board gave was that Mr. Feig continued to work as a firefighter until such time as his injury caused him to have surgery. I believe that is totally irrelevant. I mean, is he to be punished because he's a diligent worker? There's absolutely no evidence of an intervening injury or any trauma from when he first injured himself, which was not disputed until the time he had surgery. So with those things in mind, I would respectfully request that this court overturn the circuit court and board's decision and award Mr. Feig a group disability pension. Thank you. You'll have rebuttal. Ms. Seitz. May it please the court, my name is Esther Seitz and I represent the Bloomington Firefighters Pension Board of Trustees. The standard of review here is very deferential to the pension board. The narrow question before this court is only whether or not the findings in the decision by the pension board are against the manifest weight of the evidence. And a decision is against the manifest weight of the evidence only if there is no evidence whatsoever in the testimony before the board or in the record before this court that would support the decision or the finding that was entered by the pension board. Here, there is plenty of support in the record that supports the finding that Mr. Feig actually suffered from a non-duty injury which entitles him to a non-duty disability pension and that he did receive rather than a line of duty disability pension which the pension board declined giving to him. Is the worker's count settlement in the evidence in the record? I don't know, I don't think it is. It's not, is it? It's no precedent for our decision. No, well it's a different case entirely, right? It's my understanding it's a different case. As Mr. O'Connor pointed out, before this report there was some stipulation by Mr. Feig that there was evidence in the record to support the pension board's finding and that is all that's required here. In fact, it answers the precise question before this court that there is some competent evidence in this record that supports the board's findings. Which rejected a line of duty. What about Mr. O'Connor's explanation about all that? Mr. O'Connor explained that it was a scintilla of evidence and that is not enough to mean enough evidence to counter the manifest way to the evidence. Well, the one he just gave. Well, I think that all you have to find is that there was some competent evidence in the record and as long as you deem that what he calls a scintilla of evidence is competent, then that's enough and you can affirm. Even I think a small amount of evidence can be competent evidence and is used all the time by appellate courts to affirm in these types of cases just because the administrative agencies are in a better position to judge these kinds of cases having the testimony and all the actual physical people testifying before them. So I think the standard of review which is set by statute allows even for a little bit of evidence. So what is your little bit of evidence? Well, the little bit of evidence is, and actually I don't think it's a little bit of evidence. I think it's quite a lot of evidence in the record. But I was just saying that even a small amount of evidence would be enough as long as it's competent. I think here there's plenty of evidence. First of all, Mr. Fyke did not immediately file an incident report. But doesn't it have to be medical evidence? I mean, this is all circumstantial evidence that accompanies many a back injury. Right, and the pension board surely did consider the medical evidence. There was plenty of medical evidence in the record and there's no indication that it wasn't considered. Of course that medical evidence was considered, but it just wasn't what was mentioned in the order. And there is nothing in the law that requires this specific pinpointing to medical evidence because, as is the case I think a lot of times in these types of cases, the medical evidence goes both ways. There's doctors that say this and there's doctors that say that. So that was the case here. And it could have been that the pension board just did not think that there was really a point in elaborating these battles of the experts and therefore pointed to the more concrete evidence that it received in the hearing. And a lot of that was from, I think, Mr. Fyke's testimony before the board. He didn't seek medical attention right away. He did return to work the very next day. There was no indication that he was physically frail. He did continue to work his normal routine, which includes performing a physical agility test that is required for all the Bloomington firefighters, and he completed that test successfully. There's also plenty of testimony that showed that Mr. Fyke had previously treated this pain, that he was suffering from chronic back pain, and he was routinely treating that pain with painkillers such as ibuprofen. And in cases such as these where there have been chronic, there's been evidence of chronic injury before that predates the alleged state of injury, the appellate courts have affirmed pension boards that declined to award a line-of-duty disability pension. Therefore, the board's determination... That is right. Here, there is evidence in the records to support, though, that there wasn't even an aggravation. He had surgery, right? He did have surgery, yes. But that doesn't mean that the work as a firefighter aggravated it. He had this condition of back pain, and he had that before he joined on as a firefighter in Bloomington. Do we know that he had the herniation before? Do we know that? Yes. The herniation itself. I don't know about that. We therefore ask that you uphold the decision of the board, finding that this injury was degenerative in nature and not the result of an act of duty. Do you have any questions? Thank you. Mr. Conner, rebuttal. Your Honor, I have three questions. Your Honor, I have no rebuttal if there are any other further questions. Was the herniation... There is no evidence of any diagnostic studies which showed any herniation before this accident. The only diagnostic study was the scoliosis examination, which... Wasn't there also an x-ray for something else that showed degenerative... That was cervical. That was argued also, but that was in a totally different area of the body. That was the neck, and we're talking about the back. Just briefly, when she mentioned previous back pain, it's nowhere mentioned by the board what the doctor stated. If we look at what the doctor stated, they answered those questions. So if the court would like to examine those in the brief, the doctors answered those questions regarding previous back pain, and they felt that this accident exacerbated the condition and was causally connected. All of the doctors. I believe two of the three doctors. Dr. Fletcher just talked about needing more treatment from his office. Didn't really say E, A, O, or N, A. Thank you. Thanks. Thank you. The case is submitted. The court stands in recess.